NOT FOR PUBLICATION                                                                          CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____
                                                    :
MALVERN LEWIS, et al.,                              :
                                                    :
       Plaintiffs,                                  :    Civ. No. 02-4486 (JAP)
                                                    :
   v.                                               :
                                                    :
                                                    :    **OPINION**
COUNTY OF MERCER, et al.,                           :
                                                    :
       Defendants.                                 :
_____:

APPEARANCES:

Alberto Rivas
Lite DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, NJ 07102
    *Attorney for Plaintiffs*

Patrick J. Duncan
Mercer County Counsel's Office
P.O. Box 8068
Trenton, NJ 08650
    *Attorney for County Defendants*

Stephen E. Siegrist
Murphy & O'Connor, LLP
1810 Chapel Avenue West
Suite 103
Cherry Hill, NJ 08002
    *Attorney for Defendants Dr. Larry Pettis, M.D. and Nurse Practitioner Patricia Hutchinson*

PISANO, District Judge.

       Currently before the Court are two motions for summary judgment—one on behalf of

Defendants Dr. Larry Pettis, M.D. ("Dr. Pettis") and Nurse Practitioner Patricia Hutchinson

("Nurse Hutchinson")[1] and another on behalf of the County of Mercer, Robert Prunetti, County Executive, City of Hopewell Borough, George Padget, Mayor, Warden Dennis Cunningham of the Mercer County Correctional Facility ("MCCC"), Archie Kleine, Warden, John Rickie, Public Safety Director and Sergeant Hopkem (the "County Defendants")—on Plaintiffs' allegations that the Defendants violated their civil rights pursuant to 42 U.S.C. § 1983 for failure to provide adequate medical care.  For the reasons stated below, the Court grants both motions for summary judgment in their entirety and dismisses Plaintiffs' complaint with prejudice.

## I. BACKGROUND

At all relevant times, Plaintiffs Malvern Lewis ("Lewis") and Rafael DeJesus ("DeJesus") were inmates in the MCCC.[2]  Medical records from the MCCC indicate that Lewis received medical care from Dr. Pettis and Nurse Hutchinson on several occasions during the time period ranging from September 2000 to March 2003.  In the fall of 2000, Lewis began experiencing a myriad of gastrointestinal problems.  After attempting to treat him with common over-the-counter medications, such as Zantac and Maalox, Dr. Pettis ordered that Lewis undergo blood work to test for Heliobacter Pylori ("H. Pylori"), a bacteria that can cause stomach infections and eventually lead to chronic heartburn, gastritis, and stomach ulcers.  On October 16, 2000, Dr. Pettis diagnosed Lewis as having H. Pylori and began a course of treatment consisting of antacids, antibiotics, and proton pump inhibitors.  Throughout 2001 and 2002, Lewis

---

[1] Plaintiffs' complaint incorrectly names Dr. Pettis as Dr. L. Peddis and Nurse Hutchinson as Pattie Hutchinson, L.P.

[2] Plaintiff William Rivera was dismissed from the case on March 3, 2006 via a stipulation of dismissal.  Therefore, the Court finds it unnecessary to discuss facts related to Rivera's dismissed claims.

occasionally sought medical attention for stomach pains and other gastrointestinal problems.  Dr. Pettis continued treating Lewis for H. Pylori and, concerned that Lewis might have an ulcer, prescribed Protonix.  Additionally, Dr. Pettis made an appointment for Lewis to see Dr. Chowdhury, a specialist at St. Francis Medical Center.  On February 12, 2003, Dr. Chowdhury examined Lewis and recommended an endoscopy.  The results of the endoscopy indicated that Lewis had slight chronic inflammation of the stomach lining, but he tested negative for H. Pylori.  At the time of his deposition on January 11, 2006, Lewis was incarcerated in the New Jersey State Prison in Trenton.  Doctors there have advised Lewis that he does not have H. Pylori.  Lewis, however, still suffers stomach pains and cramps and he continues to believe that he has H. Pylori.

On May 28, 2002, while incarcerated at MCCC, DeJesus sought medical treatment for stomach pains.  After examining him the next day, Nurse Hutchinson prescribed Maalox and Flexiril.  When DeJesus continued to experience stomach pains during the summer and fall of 2002, Dr. Pettis prescribed Amoxicillin and arranged for DeJesus to see Dr. Chowdhury.  Dr. Chowdhury examined DeJesus on March 18, 2003 and found that he suffered from constipation and a spastic colon, but not an H. Pylori infection.  As of January 18, 2006, when his deposition was taken, DeJesus continued to complain of stomach pains, similar to those he experienced during the time period relevant to this case.  No one on the medical staff at New Jersey State Prison in Trenton, where DeJesus is presently incarcerated, has advised him that he has H. Pylori and the prison medical staff has not prescribed any antibiotics.

Notably, Plaintiffs do not allege that they sought and were denied medical treatment.  To the contrary, both men sought and received medical care on several occasions and for several

different complaints.  In addition to various stomach ailments, Lewis was treated for a toothache, a boil on his back, hand and wrist injuries, headaches, and back pain.  DeJesus was treated for hemorrhoids, herpes, back pain, pain in the left side of his jaw, pain in his right hand, and a variety of psychiatric conditions.

On September 12, 2002, Lewis filed a *pro se* complaint, which DeJesus later joined, alleging that Defendants violated his civil rights in contravention of 42 U.S.C. § 1983.  The complaint asserts that Plaintiffs contracted H. Pylori from the water or food at the MCCC and that Defendants did not provide them with sufficient medical care.  Dr. Pettis and Nurse Hutchinson and the County Defendants filed answers on February 6, 2003 and March 5, 2003, respectively.  On May 12, 2003, the Court granted Plaintiffs' motion for appointment of counsel and on August 5, 2005, Alberto Rivas, Esq. was appointed as Plaintiffs' counsel.  The parties have completed discovery and have submitted briefs in support of and in opposition to Defendants' motions for summary judgment.

## II. DISCUSSION

### A. Standard of Review under Federal Rule of Civil Procedure 56(c)

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law identifies which facts are critical or "material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On a summary judgment motion, the moving party must show, first, that no genuine issue

of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to present evidence that a genuine fact issue compels a trial.  *Id.* at 324.  In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party.  *Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The Court shall not "weigh the evidence and determine the truth of the matter," but need determine only whether a genuine issue necessitates a trial.  *Anderson*, 477 U.S. at 249.  If the non-moving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine issue of material fact exists, then the Court must grant summary judgment.  *Big Apple BMW v. BMW of North America*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### B.  Analysis of Plaintiffs' Claims under the *Estelle* Test

As an initial matter, the Court notes that Plaintiffs relinquish all claims against the County Defendants in their brief in opposition to the motions for summary judgment.[3] Therefore, the Court grants summary judgment in favor of the County Defendants on all claims against them.  Further, there is no genuine issue of triable fact because Plaintiffs have accepted Defendants' Statement of Undisputed Facts.  (Plaintiffs' Opp. Br. at 2.)  Thus, the Court must

---

[3] In their brief, Plaintiffs acknowledge that "no appropriate legal basis exists for the imposition of liability on [the City of Hopewell or its Mayor]."  (Plaintiffs' Opp. Br. at 1.) Further, Plaintiffs recognize that "no respondeat superior liability can be imposed on [the County] defendants," "there is no evidence that implicates the County defendants with any alleged contamination of food at the County Jail resulting in the contraction of H. Pylori," and "[t]here is no evidence of any personal involvement or specific conduct alleged of the County defendants to warrant continued litigation against them."  (*Id.*)

5

decide whether, as a matter of law, the medical care Dr. Pettis and Nurse Hutchinson provided to Plaintiffs was inadequate such that it violated Plaintiffs' constitutional rights.[4]

Plaintiffs seeking relief under 42 U.S.C. § 1983 for alleged violations of their constitutional rights frequently invoke the Eighth Amendment's prohibition on the use of cruel and unusual punishment.  However, "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'" *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)); *Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("[The Eighth Amendment] was designed to protect those convicted of crimes and consequently the [Cruel and Unusual Punishment] Clause applies only after the State has complied with constitutional guarantees traditionally associated with criminal prosecutions.").

Where, as here, pretrial detainees seek relief pursuant to 42 U.S.C. § 1983, the proper inquiry is whether the Defendants violated the detainees' Fourteenth Amendment due process protections.  *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) ("Pretrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process Clause."); *see also Natale v. Camden County Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003).  The Eighth Amendment remains relevant, however, because "the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner."  *Hubbard*, 399 F.3d at 166 (citations, internal quotations omitted).  Further, the deliberate indifference standard set forth in *Estelle v. Gamble*, 429 U.S. 97 (1976), applies to

---

[4] The Court notes that Plaintiffs have not pursued any medical malpractice claims against Dr. Pettis and Nurse Hutchinson.  Moreover, even if Plaintiffs' had pursued such claims, they have failed to comply with the New Jersey Affidavit of Merit Statute.  *See* N.J.S.A. 2A:53A-27.

claims for inadequate medical care regardless of whether the plaintiff is a convicted inmate or a pretrial detainee. *See, e.g.*, *Natale*, 318 F.3d at 581-82 (evaluating "Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment.").

Under *Estelle*, to demonstrate a violation of his constitutional right to adequate medical care, a pretrial detainee must establish that (1) he had a serious medical need; and (2) the defendant was aware of this need and deliberately indifferent to it. *See Estelle*, 429 U.S. at 104; *accord White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). "In addition, where the denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

Deliberate indifference occurs "[w]here prison authorities deny reasonable requests for medical treatment . . . expos[ing] the [plaintiff] to undue suffering or the threat of tangible residual injury," where prison officials intentionally refuse to provide necessary medical care, or "where prison officials erect arbitrary and burdensome procedures that result[] in interminable delays and outright denials of medical care to suffering inmates." *Id.* at 346-47 (citations, internal quotations omitted). Further, prison officials may not delay necessary treatment for non-medical reasons or, with deliberate indifference, "opt for an easier and less efficacious treatment." *Id.* at 347 (citations, internal quotations omitted). "Nor may they condition provision of needed medical services on the inmate's willingness to pay." *Id.*

It is well settled, however, that "mere allegations of malpractice do not raise issues of constitutional import." *Id.* at 346; *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."). Thus, "no claim is presented when a doctor disagrees with the professional judgment of another doctor." *White*, 897 F.2d at 110. Further, the *Estelle* test "affords considerable latitude to prison medical authorities in the diagnosis and treatment of medical problems of inmate patients." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). In sum, "a prisoner must show more than mere negligence; he must show deliberate indifference to a serious medical need." *Durmer*, 991 F.2d at 67.

Taking the "serious medical need" prong first, Defendants appear to concede that an H. Pylori infection constitutes a serious medical need. Additionally, it is undisputed that Defendants diagnosed Plaintiffs as having H. Pylori infections and that such a condition requires medical treatment. *See Lanzaro*, 834 F.2d at 347. Therefore, the Court find that Plaintiffs have satisfied the serious medical need prong of the *Estelle* test.

As to the second prong, the essence of Plaintiffs' claim is that Dr. Pettis and Nurse Hutchinson were deliberately indifferent to Plaintiffs' serious medical needs because Defendants continued the same course of treatment over a lengthy period of time even though the treatment failed to eradicate Plaintiffs' symptoms. Plaintiffs assert that Dr. Pettis and Nurse Hutchinson should have evaluated the efficacy of their treatment and considered alternative treatments. The alleged failure to do so, in Plaintiffs' view, resulted in unnecessary and wanton infliction of pain and demonstrated Defendants' deliberate indifference to Plaintiffs' serious medical needs. Defendants contend that the course of treatment that they followed was successful in treating

Plaintiffs' H. Pylori infections. Therefore, Defendants argue, there was no need to evaluate their treatment methods or consider alternatives, and any failure to do so in this case does not establish that Defendants deprived Plaintiffs of their constitutional right to adequate medical care.

According to the MCCC medical records, Lewis first complained of gas and stomach pains in the fall of 2000. The prison medical staff prescribed Maalox and Zantac, which Lewis took. A few weeks later, Dr. Pettis determined that Lewis had a H. Pylori infection and prescribed Previcid, Biaxin, and Amoxicillin (an antibiotic); Lewis took the medication. Over the next two years, Lewis occasionally complained of stomach problems, including gas, pains, and constipation. During this period of time, Dr. Pettis and Nurse Hutchinson treated him with a number of different medications, including Keflex (an antibiotic), Maalox, Metamucil, Protonix, Previcid, Flagil, and Biaxin, among others. Also, Dr. Pettis and Nurse Hutchinson arranged for Lewis to see Dr. Chowdhury, a specialist at St. Francis Medical Center. Upon Dr. Chowdhury's recommendation, Lewis underwent an endoscope, which revealed that Lewis had slight chronic inflammation of the stomach lining, but that he no longer suffered from an H. Pylori infection.

The facts as they relate to DeJesus follow a similar pattern. When DeJesus first complained of stomach problems, Nurse Hutchinson prescribed Maalox and Flexeril, which DeJesus took. Once the prison medical staff determined that DeJesus suffered from an H. Pylori infection, they commenced a more aggressive course of treatment, including the use of several different antibiotics intended to kill the bacteria causing the infection. When symptoms persisted, Dr. Pettis scheduled an appointment for DeJesus to see Dr. Chowdhury. After examining DeJesus, Dr. Chowdhury found that Plaintiff suffered from constipation and a spastic colon, not H. Pylori.

Plaintiffs claim that the foregoing undisputed facts demonstrate that Dr. Pettis and Nurse Hutchinson refused to vary from a standard course of treatment even though that treatment was ineffective in eradicating Plaintiffs' symptoms. The Court, however, rejects Plaintiffs' characterization of the facts for two reasons. First, the record belies Plaintiffs' suggestion that Defendants' course of treatment was ineffective in treating Lewis and DeJesus. Indeed, Dr. Chowdhury's determination that neither Plaintiff suffered from H. Plyori confirms that Dr. Pettis and Nurse Hutchinson were successful in treating Plaintiffs' infections. Second, the MCCC medical records reveal that Defendants did alter the course of treatment over time. Dr. Pettis and Nurse Hutchinson, to whom the law accords "considerable latitude in the diagnosis and treatment of prisoners," administered over-the-counter medications, then antibiotics, and finally arranged for the involvement of a specialist. *Pierce*, 612 F.2d at 762. Thus, even if the course of treatment were ineffective, the Court could not conclude that Dr. Pettis and Nurse Hutchinson failed to adjust their treatment methods thereby rendering them deliberately indifferent to Plaintiffs' serious medical needs. Moreover, though Plaintiffs assert that Defendants should have considered alternative treatments, they neither identify any alternative treatments for H. Pylori nor provide evidence that any such alternatives exist.

In sum, Plaintiffs have not presented any evidence indicating that Defendants provided anything less than full and adequate medical care which resulted in the successful treatment of Plaintiffs' H. Pylori infections. Thus, the Court finds as a matter of law that Plaintiffs suffered no constitutional violation. Accordingly, the Court grants summary judgment in favor of Dr. Pettis and Nurse Hutchinson on all claims and dismisses Plaintiffs' complaint with prejudice.

### III. CONCLUSION

For the reasons explained above, the Court grants summary judgment on all claims in favor of the County Defendants, Dr. Pettis, and Nurse Hutchinson and dismisses Plaintiffs' complaint with prejudice.  An appropriate order accompanies this opinion.

/s/ Joel A. Pisano<br>JOEL A. PISANO, U.S.D.J.

Dated:  December 18, 2006